Good morning, Your Honor. Good morning. Shane Murphy on behalf of Plaintiff and Appellant David Michery. I'd like to reserve five minutes for rebuttal. Do I keep track of that? You do. Please be advised that the time showing is your total remaining time. Okay. Thank you. So what I thought was interesting about this case was that up until about a week ago, I thought that the strategy of pulling a comparative fault defense right before it gets submitted to the jury was a pretty daring one. And it was one that was probably a one-off kind of a situation. I didn't think that there was going to be a lot of examples of this going on because it seemed to kind of get at the very fabric of how substantive laws applied in California under a comparative fault regime. And sure enough, when I did research to prepare the briefing in California and in the Ninth Circuit and the Federal Circuits, I didn't find any examples of the court dealing with this sort of a context where you litigate a case all the way up until you're talking about instructions right before it goes to jury, and then you pull your defense. And I was surprised about a week ago when I received the letter notifying the court of additional authorities from defense counsel to see an example of just this out of I think it was the Tenth Circuit or the Eleventh Circuit. And it kind of caught me off guard, not so much the case is opposed to what I was arguing, but because the defendant in that case is the exact same defendant in this case. And it was clear to me looking at it that this is not the first time Ford has tried this. And then doing research in Florida and Missouri and in New York, it became clear to me that there are certain categories of claims that certain defendants litigate in the products liability context where this particular strategy pays dividends apparently. And it tends to come up in the context where you have conduct by the plaintiff that implicates a certain kind of social objectionability, like a personal responsibility, moral culpability. So I understand your argument, but I'm having a difficult time trying to determine what the harm was if there was error. So the harm in this context I think is fairly straightforward. There is no way for the jury to express this idea that potentially it decided that 50 percent of the fault lied with David Mishreen. But what if they didn't even get there? If they decided the causation issue, why would they even get to the comparative fault issue? Well, they got to the comparative fault issue because it was inappropriately put first. But neither the causation issue nor the comparative fault issue, you said it was placed there with no jury instruction. Is that your argument? No, there was a jury instruction on comparative. Sorry, I apologize for getting confused. Yeah, I thought your argument was that the court gave a comparative jury instruction and you didn't want one. Yeah, well, no. So the court did not give a comparative fault instruction. I apologize. There was no comparative fault instruction. The reason the jury didn't reach the causation argument was because the court inappropriately put the risk-benefit question first. I apologize. I misspoke. So in its assessment of liability, you know, as the court described it, the jury looked at this and first encountered the risk-benefit analysis, which should have been second, but it came first. Well, I think what Judge Rawlinson is asking is, since the jury found there was no design defect, what does it matter? That's the end of the case. Well, we have a lot of cases that say, or at least we have some case law that says, instructional error harmless where the verdict demonstrates that the jury found all elements legally necessary to support the verdict. So I guess I'm having the same question as well. Yeah, so the question on the verdict form that would have given the jury the opportunity to express itself with respect to the culpability of the plaintiff, and bear with me, I'll walk through this, wasn't there. So there was no way for the jury to state, hey, the plaintiff was 55 percent or 80 percent liable. His conduct encapsulates 80 percent of the liability in this case. There was no way for the jury to do that. So when they encountered the verdict, if that's what they had decided, there was no way for them to express that other than to find, on behalf of Ford, by one of the two questions that it was looking at. And neither of those questions was framed in terms of the causation as it related to plaintiff's conduct. Both of those questions were expressly and explicitly framed in terms of the causation and the risk-benefit analysis as it related to the product that Ford had produced. So there's no way. Go ahead. The difficulty I'm having with your argument is that you don't get to comparative fault unless there's fault. But you can't, it's a circular argument in a sense. Correct. Because if they find that there's comparative fault, and they find that more fault is attributable to David Mishry. I think that's what I'm struggling with with your argument is that comparative fault only comes into play once there's been liability, a liability determination. And if there was no liability determination by the jury, regardless of the order of the questions, maybe perhaps the court should have prudently flipped the order. But in any event, if there was a finding by the jury of no liability on the part of Ford, how do we get to the comparative fault argument? Because you can't take what the jury did in that verdict form as a meaningful statement of the liability as it pertains to this case as it should have been instructed, as the court should have instructed the jury on it. Whatever the jury did there was necessarily tainted by its inability to express anything other than what was on the verdict form. So if the verdict form was a general verdict form and there had been no discussion of comparative fault, no instruction as was the case here, and there was no way to assign fault comparatively, that general verdict form that they sign off reflects what the jury was instructed with and how it was instructed to resolve the issues in the case. It was instructed to resolve the issues in the case as it pertained to Ford's conduct. So there's no way for the jury to look at that verdict form and express anything other than a binary decision about Ford's liability. Now, I agree with you from a kind of teleologic standpoint. You look at this thing and it seems to say to you, hey, they found liability. That means that there's no harm. But there's only one of two options available to the jury. And if, for instance, they had thought that David Mishry was 80% liable, the only way that they could express that is by a no liability finding for Ford. And that's kind of the end of the case. Otherwise they'd have to like write in on the verdict form, hey, we've decided that David Mishry is 80% at fault, but there were no instructions for the jury to do that. But they found that the expedition was not effectively designed and never had to reach the question of causation. But that's true. But you think of this from the standpoint of the jury. They were never instructed that they could consider David Mishry's, you know, proportionate fault. They were never instructed that there was a way to kind of assign fault to David Mishry. They were just given a single piece of paper with three questions on it, none of which addressed David Mishry. But they understood that to mean this is their way of resolving liability in this case. So if they are talking amongst themselves during deliberations and they say, okay, we've decided that David Mishry bears the overwhelming majority of liability in this case, but there's only one person that we can hold liable. It's either Ford or no Ford. There was a substantial factor causation instruction that accurately informed the jury that Ford could still be held liable if the design was not the sole cause of the injury sustained. That's true. However, that instruction was read in connection with the products liability instruction, which lays out the three prima facie elements of what it is that makes up products liability. You have use of the product, plaintiff being injured, and then a causal connection between the use of the product, its design, and the injury. So they're looking at resolving that factual issue in the context of the causation entry that existed on the verdict form. They're not looking at it in a more kind of encompassing sense. Maybe this includes misconduct by defendant, maybe it doesn't. And the same is sort of true, it's actually explicitly true of the risk-benefit analysis. That particular issue implicates how the accident occurred. And there's no way for that. The factors of this, I can read them to you, but they're in the instruction. The factors discuss how the accident occurred, the risk of the danger or the risk of the harm, the gravity of the harm. And so those things necessarily look at what's going on in the accident. And so when the jury is embracing this particular issue and trying to address it, they're necessarily factoring those considerations improperly. The jury never sent out a note indicating problems along the line you're talking about, did they? No, but they weren't instructed that that was even a possibility. And what instruction did you ask for? What specific instruction did you ask for on this subject that the court refused to give? There was a stipulated instruction for comparative fault. And when this issue came up, defense counsel said, hey, in this very kind of amicable way, I'm going to withdraw comparative fault because I want to make lives easier for the jury and for the court. And at that point, plaintiff's counsel's position was, well, that means that they're only going to address causation directly. They're not going to blame plaintiff during closing argument. Now, this is at a stage in the case where all the evidence had come in, and arguably, plaintiff may have been able to move for mistrial because all of this evidence of plaintiff's misconduct was irrelevant and prejudicial. But in any event, they go directly. Did you mean for a mistrial? No, because we directly go into recess. And during recess, plaintiff's counsel goes and talks to defense counsel, is my understanding from the transcripts. He comes back on the record and immediately says, you know what, judge, I have a problem with this instruction because my understanding when he withdrew the affirmative defense was that he wasn't going to argue the plaintiff was at fault. Instead, he told me that he's actually going to argue that. I don't think that you can do that. I don't think you can argue that it's plaintiff's fault, the accident is plaintiff's fault, and not have a comparative fault instruction. And so, I mean, he doesn't use the magic phrase, I am specifically requesting the comparative fault instruction, but there was a stipulated instruction that had been in orbit that the parties had agreed to, and he was in that context asking the court, hey, how can you do this if you don't have the instruction? I don't understand how you can fault a judge for not giving an instruction that you never expressly said, judge, I want now in light of these developments for you to give this instruction. You say, well, it's implicit. A district judge doesn't have to guess what's implicit in your mind. I think it was fairly expressed by what the parties were saying. Well, did you object when that was happening? That was the objection. I don't, I mean, he may have been able to invoke the magic word objection. He didn't, I don't know. The magic word objection is a very powerful word. This is true. I don't disagree with that. But do you concede the jury had to decide both, the design defect and causation? Yes. Okay. And so if they did decide comparative fault, like, you know, you want and which wasn't there, and they still didn't find a design defect, we are still in the same position, aren't we? That presupposes that the way that they answered the first question on the verdict form wasn't affected by their inability to address the comparative fault in this case. This is exactly what Ford was trying to do. They put on all this evidence about how he wasn't wearing a seatbelt. They put on a bunch of evidence about how he did, he was a terrible driver. Isn't that very speculative at this point? I mean, your banking, it sounds like, because you've devoted all, the majority of your time on this, that because that wasn't presented the way you wanted it to be presented, that that would have made all the difference in the world when they still had to determine a design defect. Well, there's a reason why instructional and jury verdict form error is presumed, and it's presumed because you can't know what the jury did. All you can know is that they were operating under a misconception of the law, and so that necessarily infects the process. It makes it an unfair process, and that's why it's presumed. That's the nature of the review and on an appeal. Counsel, you're down to one minute and 55 seconds. I'll reserve for a moment. All right. Thank you, counsel. Good morning, Your Honors. Emily Quatto, representing Ford Motor Company. As the Court has observed, we've heard a lot about the failure to give a comparative fault instruction, but the fact of the matter is the jury answered the first question on the verdict form, was the 99 expedition defective? No. And it never reached any of the causation questions in this case. But the verdict form was not the standard order in which a verdict is usually received in this kind of case. Why did that not matter? Because the jury had to answer, had to find both defect and causation in order to find for plaintiff. I know that, but why was the deviation from the regular form of verdict? It had no impact on the verdict. But why was it done that way? Because Ford wanted to focus the jury on the question of defect, and defect was truly the central focus of Ford's case, that Ford had proved that the 1999 expedition was reasonably safe and wanted the jury to answer that question first and foremost. But the discussion following this model instruction cites several California cases that are very clear that the order of the instruction was purposeful and meant to guide the jury to address the proper burdens. So if this instruction was deliberately drawn, then why isn't it an abuse of discretion for the order of the verdict to be contradicted? Well, the jury was properly instructed using the standard form. And the standard form jury instruction contains two separate inquiries. Now, I understand that. You're not answering my question on the verdict. Well, it makes no difference because plaintiff has to prevail on both. Then why is it done if it makes no difference? Because Ford wanted to focus the jury on the question of defect and not on the question. It made a difference because Ford wanted to focus the jury on the defect issue. So it does make a difference. And the question is, if that was a tactical maneuver by Ford that led the district court to abuse its discretion, why isn't that reversible error? For several reasons. First of all, the structure of the questions on the verdict form didn't in any way impact the burden of proof. Ford still had the burden to prove the benefits outweighed the risk. And it really ends up giving the plaintiff the benefit of the doubt that they could have established causation. And it's not, and ultimately, the question of defect is an underlying threshold question about plaintiff's case. Plaintiff has to prove that vehicle crushed caused the injury. And so that's what's contemplated, I imagine, in the model jury instruction. But yet, I mean, they understand that, the drafters. But yet they, it was very purposeful, the order in which they put the instruction. And so I'm not quite sure why, then, the verdict form comes out different. I mean, it seems like you did it for a tactical advantage so that the jury wouldn't have to see the second prong of that. It's so that the jury doesn't have to bother with the causation issues, given the strength of Ford's case on the question of defect on which Ford bore the burden of proof. It doesn't make a difference, you know, the substantial factor section of the causation instruction that comes first under the Casey says that plaintiff's only burden is to prove that the alleged design defect contributed to his injury. Here, that would be plaintiff's theory that vehicle crush contributed to his injury. And then the burden flips to Ford to show that regardless of whether, you know, that was true, the vehicle was reasonably safe as designed. So it doesn't matter, ultimately, whether the jury, the order in which the jury answers those questions. Because Ford still bears the burden to prove that the benefits outweigh the risks. And it did so here. That's what the jury found. It doesn't. Maybe I'm missing something here. It really doesn't matter what Ford's motive was to suggest this order. What matters is whether the judge had the discretion and whether there was a logic to the way he reordered the instruction. And if the reason was because he wanted to put the central issue in the case first, there's no Ninth Circuit case that says he can't do that, is there? You're absolutely correct, Your Honor. The judge has a lot of discretion over the verdict form as long as it properly presents the issues. And here the jury was properly instructed on every element of the case. And there's nothing about the judge's selection of the verdict form that altered the application of those instructions. Did the judge select the verdict form or did Ford prepare the verdict form? I believe Ford proposed it and there were alternative versions. And the court agreed that Ford's verdict form made the most sense because in his mind, he thought that the most logical way for the jury to approach this case was to address the question of defect. Was there something wrong with this vehicle? And then move on to the question of whatever it was that was wrong. Did it cause plaintiff's injury and then damages? That's a logical way to try the case. And there's everything about the jury instructions ensured that the jury was still applying the proper burdens of proof on each element that had to be answered favorably for plaintiff in order for plaintiff to prevail. Counsel, why did Ford withdraw his comparative fault defense in the middle of trial? Ford withdrew its comparative fault defense at the close of the evidence because Ford believed the evidence did not show that there was any basis for allocating any fault to Ford. So Ford wanted to make sure if the jury were to ever reach the question of causation, which Ford did not believe it would do, that it would be focused on the proper question of substantial factor causation and not risk the sort of compromise verdict that plaintiff might argue for if comparative fault remained in the case. Ultimately, it was up to Ford whether it wanted to proceed with an affirmative defense of comparative fault. And plaintiff never gave the district court the opportunity to know that he was requesting it in the face of Ford's withdrawal. Simply objecting to what Ford is going to argue in its closing argument is not the same thing as affirmatively requesting a jury instruction on an issue. Was Ford preparing to argue fault in the closing argument? Is that how the plaintiff perceived the remarks from Ford's counsel? All of Ford's arguments in closing argument were geared towards the issue of causation. Ford isn't talking about Mishra's comparative fault. Ford is talking about what caused his injuries, given Ford's position, that nothing about the vehicle had anything to do with them. And so the issue of causation is necessarily separate from the issue of comparative fault that might come into play down the line. Just because certain facts would be relevant to both the issue of causation, maybe some of the factors of the risk-benefit test, and comparative fault were the jury to reach that issue down the line, doesn't mean that the two inquiries are the same. The evidence is relevant to several different issues, and Ford was focused specifically on causation throughout its closing argument. It was not making, you know, the premise of plaintiff's argument is that by withdrawing the comparative fault defense, somehow Ford converted this case into a case of the now defunct doctrine of contributory negligence, where any fault of the plaintiff would negate Ford's liability. But that's simply a false premise. The jury was properly instructed on the substantial factor test of causation and the burdens of proof on the elements of the design defect claim. So there's no basis to speculate that the jury somehow applied a contributory negligence instruction it was never given. Plaintiff's argument yet really just assumes that the jury didn't actually answer the questions on the verdict form as they were written in response to any of the jury instructions as they were written, and just assumes the jury applied a contributory negligence analysis, even though that was not supported by the jury instructions. What's your response to opposing counsel's position that the jury was unaware that they could inquire about the order of the questions on the verdict form? Well, I don't think it matters whether the jury was going to inquire on the order of the questions. The order of the questions were presented on the verdict form in the way the judge thought was most logical, given the way the evidence had come in. Well, Judge Rakoff had noted, had asked if there were any questions from the jury regarding the verdict form to indicate confusion in opposing counsel's response, was they didn't even, they weren't aware that they could pose those questions. What's your response to that? That's very speculative. We don't know what the jury, why the jury didn't ask any questions. The jury resolved this case very quickly on the question of defect. There's no indication that the jury was confused by anything, given especially the overwhelming evidence of, that Ford presented a trial that the risks of, that the benefits of the vehicle as designed outweighed any risks. Well, let me go back, though, to the instruction and the reason for the instructions to be in the order that they are. It looks like that discussion following the model rule cites to various California cases, and then upon making the initial burden, plaintiff bears the initial burden to make a prima facie case showing that the injury was proximately caused by the prox design. Upon making that showing, the burden shifts to the defendant. Based on this discussion, you know, it appears that the order of the instruction was meant deliberately to shift the burden from the plaintiff to the defendant in strict liability cases. So it also, this burdenship also highlights the shift of the burden of producing evidence, plaintiff's burden to show that he was injured while using the product, and then the burden of proof, defendant's burden to prove that the product should not be judged defective. So, again, it seems like the purpose and the order of the instruction is related to the burden and so how is that not affect, how is the verdict form and its order not affect that? Because the verdict form has to be interpreted and construed in light of the instructions that were given. And the instruction was given was the standard form case instruction that laid out who bore the burden of proof on each element, made it very clear that on that question, that risk benefit question that the jury answered yes to, Ford bore that burden. And plaintiff's argument, closing argument, repeatedly emphasized Ford's burden throughout. There's no confusion in the jury's mind on who bore the burden to prove that the benefits outweighed the risks. Ford bore the burden to produce evidence on that and to persuade the jury, and it did so. There's nothing about the fact that the jury answered that question first rather than second that would impact whether the jury would follow its instruction to hold forward to its burden of proof. On the question of jury notes, I'm looking at the record at page 63 and the judge gave the standard instruction, quote, if it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk signed by any one or more of you. I will not communicate with any member of the jury or anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering, et cetera, et cetera. So they certainly knew they could send out a note if they were confused in the slightest. Absolutely. They knew that they could send out a note, and they did not do so because the jury instruction is very clear, that Ford bore the burden to prove the benefits outweighed the risks. And the structure of the instruction really outlays two separate inquiries that have to be conducted separately, and it doesn't matter what order they're going. Plaintiff has to prove substantial factor causation. Ford has to prove the benefits outweigh the risks. As long as Ford proves the benefits outweigh the risks, Ford is entitled to judgment, regardless of whether plaintiff met their burden on causation. That's why the defect question was put first and foremost, because in the judge's mind that was logically the central issue in the case. And yet the jury is presumed to follow its instructions. So we cannot be speculating that the jury somehow disregarded the standard form KC-1204 because the verdict form asked about whether Ford met its burden first. I see that I have two minutes left, so I just want to also mention that the plaintiff's brief and our brief also address Rule 407 extensively, and I just want to make it 100 percent clear that there are none of the Rule 407 issues that this Court has to reach because plaintiffs never identified any evidence that was excluded on Rule 407 grounds. So all of those issues are largely academic, and the Court does not need to address them, as interesting as they might be. If the Court has no further questions. Here's not. Thank you, counsel. Thank you. Rebuttal. Thank you, Your Honors. I wanted to pick up on the order of the questions on the verdict form. I do think that there was a degree of confusion that was likely injected into this, and just because the jury didn't ask questions doesn't mean that the process by which the jury assessed this particular case was different than what the law requires. To quote Donald Rumsfeld, there are known knowns, there are known unknowns, and then there are unknown unknowns. And if the jury is operating in a universe where it believes that it's applying. He wasn't a member of the nice circus, I recall. No, he was not. So if they're applying law that's incorrect, they might believe that they are correctly applying incorrect law. That doesn't make the jury verdict correct. It doesn't make it a viable verdict. It makes it a verdict that's infected by the structural issues that are at play in this case. So do you have a different response, then, to Judge Rakoff's earlier question about the jury not sending a note and indicating confusion on the verdict form? I mean, to the extent that they didn't send a question is not indicative of much, other than that they looked at what they had been given and felt that they were doing the correct thing. But if you look at the instructions that were given, the fact that the instructions laid out the burden shift analysis in a certain way and the fact that the verdict form didn't line with that, I think that it's not unfair to speculate that potentially the jury thought that the first question was actually plaintiff's to prove. And it sort of seems like that's how Judge Rinskoff was looking at it. He felt as though this was a liability determination. It's not a liability determination. It's the burden shift to the defendant to push back the burden that had originally been established, the prima facie case of liability. He told the jury that it was the defendant's burden on that issue. He read the Casey instructions. That's true. So you want us, if I understand your argument, you want us to think, A, they didn't follow his instructions, B, they were, as you say, speculatively confused, and C, that this all follows because he put first a question about what was the most contested issue in the case. Do I have your argument correctly? In fact, that's not my argument. That is why jury instructions and special verdict forms carry a presumption of prejudice because you can't know. You can't know what happened. You have to make assumptions that if the jury is given an incorrect statement of the law, they're going to operate off of that or it will infect the process. But there was no incorrect statement of law. Well, the verdict form is a statement of law of sorts, and it was incorrectly ordered and it was, in plaintiff's position, an incorrect statement of law. Was there any law out there saying that the verdict has to be in a certain form, in a certain order? Not that I can point the court to at this moment, but I'm happy to prepare a supplemental briefing. And please don't give us anything unless we ask for it. Thank you. Thank you to both counsel. The case is argued and submitted for decision by the court.
judges: Rawlinson, Murguia, Rakoff